2014 IL App (1st) 130465

SECOND DIVISION
August 12, 2014

No. 1-13-0465

| | | |
|---|---|---|
| *In re* MARRIAGE OF, | ) | Appeal from the |
| | ) | Circuit Court of |
| SHARON PRATT, | ) | Cook County |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 04 D 12105 |
| and | ) | |
| | ) | |
| MURRAY PRATT, | ) | Honorable |
| | ) | Patricia Logue, |
| Respondent-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Simon and Liu concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Murray Pratt, appeals the order of the circuit court modifying his child support payments to $4,697 per month and awarding petitioner, Sharon Pratt, attorney fees in the amount of $25,000.   On appeal, Murray contends the trial court erred in modifying his child support payments because (1) it made errors in calculating Murray's income for support purposes; and (2) it failed to consider Sharon's obligation to support the children as well as the financial impact of her new husband living in her household.   Murray also contends that the trial court's award of attorney fees to Sharon was an abuse of discretion because she failed to prove her inability to pay for such fees.   For the following reasons, we affirm.

¶ 2                                      JURISDICTION

¶ 3    The trial court entered its order modifying child support payments pursuant to the judgment for dissolution of marriage on February 10, 2012.   Sharon filed her motion to reconsider on March 9, 2012, and the trial court entered its amended order on July 16, 2012. On August 15, 2012, Murray filed a motion to vacate or reconsider the amended order which the trial court denied on January 15, 2013.   On January 10, 2013, the trial court entered its order awarding attorney fees to Sharon.   Murray filed his notice of appeal on February 6, 2013. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below.   Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                      BACKGROUND

¶ 5    The parties were married on August 13, 1988.   They had four children during the marriage:   Kevin, born October 10, 1991; Brian, born November 9, 1993; Melissa, born November 13, 1996; and Heather, born September 11, 1998.   The trial court entered a judgment for the dissolution of marriage on February 2, 2007, into which the parties' marital settlement agreement (MSA) was incorporated.   The MSA provided that Murray would pay unallocated maintenance and family support in the amount of $4,400 per month for 48 months, after which time Sharon's right to receive unallocated maintenance and family support would terminate. Additionally, Murray would pay Sharon 50% of the gross of any bonus he received minus withholding for Medicare.   The MSA further provided that "[a]ll unallocated maintenance and family support payments shall terminate earlier and immediately in the event of SHARON's death, remarriage, or co-habitation on a continuing resident conjugal basis and upon MURRAY's

death." The MSA also contained a provision stating that "[a]ll restricted stock and stock options awarded to Murray or Sharon as an award of his/her share of the marital estate *** shall not be deemed income for child support purposes."

¶ 6    The parties agreed that Kevin, who has special needs, would live with Murray and the other three children would live primarily with Sharon and stay with Murray one-third of the time. The MSA set forth the amount of support which was based, in part, on Murray's anticipated gross income from his employment at Kraft Foods Incorporated (Kraft) of $172,478 (which includes base pay plus bonus), and Sharon's earned income from self-employment in 2006 of $23,618.   The parties also agreed to distribute property as follows: Murray received all benefits of his employment with Kraft, his checking account at Glenview State Bank, his nonmarital retirement assets and 50% of his marital retirement assets including (1) 67.5% of his 401(k) plan at Kraft; (2) 100% of his Vanguard individual retirement account (IRA); (3) the remainder of his Kraft defined benefit pension plan after Sharon received 50% of the marital portion; (4) 40% of the Altria stock options; (5) 40% of the Kraft restricted stock options; (6) his 2005 Toyota Sienna; and (7) the residence at 2508 Violet Boulevard in Glenview, Illinois.

¶ 7    Sharon received Glenview State Bank checking and money market accounts, and her non-marital retirement assets and 50% of her marital retirement assets including (1) 100% of her IBM 401(k); (2) 100% of her IBM retirement plan; (3) 100% of her Vanguard IRA account; (4) 32.5% of Murray's 401(k) thrift plan; (5) 50% of Murray's accrued benefits in the Kraft defined benefit pension; (6) 60% of the net proceeds resulting from Murray's exercise of Altria and Kraft stock options; (7) the 1998 Toyota Sienna; (8) the residence at 1417 Plymouth Lane in Glenview, Illinois; and (9) hotel and airline mileage.   Furthermore, since Sharon received 60% of the equity in the parties' real estate and automobiles, the MSA provided that she "shall pay to Murray

the sum of $137,154.98 within sixty (60) days of the entry of the Judgment for Dissolution of Marriage." In order to pay this sum, Sharon directed Murray to sell her share of the restricted stock and stock options, which amounted to $207,000. As a result of selling those shares, Murray's income increased in 2007, which put him in a higher tax bracket.

¶ 8 Each party agreed to take responsibility for his or her own debts and obligations from the time of their separation on July 22, 2005. Each party also waived the right to seek contribution for attorney fees and costs under sections 503(j) and 508(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503(j), 508(a) (West 2010)).

¶ 9 On May 19, 2010, Sharon filed a motion to modify the judgment for dissolution of marriage and for other relief. In her motion, Sharon requested that the trial court (1) set guideline child support; (2) modify Murray's obligation to require him to pay all of the minor children's uninsured health-related expenses; (3) modify the judgment to require Murray to pay all of the curricular and extracurricular expenses, summer-related expenses, cell phone bills and other expenses; and (4) provide any other relief deemed appropriate. Sharon also acknowledged that she has been cohabitating with Kevin Count since March 1, 2010. They subsequently married and he resides with Sharon and her minor children at the 1417 Plymouth Lane residence in Glenview.

¶ 10 In November 2011, the trial court conducted a hearing and entered an order on February 10, 2012, modifying the judgment. The parties filed cross-motions to reconsider. The trial court granted the motions to reconsider and at the hearing focused on Murray's income in 2011. In its amended order of July 16, 2012, the trial court noted that the language of the parties' MSA "obviates any need to show a substantial change of circumstances before the child support aspects of the Judgment may be modified." The MSA provided that upon termination of

maintenance, "Murray shall pay to Sharon child support pursuant to the guidelines set forth in" the Act. Nevertheless, the trial court found that a substantial change in circumstances existed due to "Sharon's cohabitation and remarriage, changes in the parties' earnings since the MSA, and significant increases in the children's expenses as they have grown up."

¶ 11 At the hearing, the trial court found that Murray's base salary for 2011 was $153,735 and he received bonus income of $20,887. It also found that Murray received dividends from his nonretirement Vanguard holdings and unvested restricted stock from Kraft in the amount of $918 for the first quarter of 2011. The trial court then multiplied the amount by four to estimate the total for the year ($3,672). It further found that Murray took a one-time IRA distribution of $5,000 in the first quarter of 2011 and "contributed heavily to his retirement accounts since the divorce." The trial court noted that as of July 1, 2010, his financial disclosure statement showed more than $1 million on deposit in retirement funds. Murray also "converted a substantial portion of a traditional IRA into a Roth IRA in 2010, even though doing so increased his income taxes by more than $70,000." Finally, the trial court found that certain restricted stock vested in 2011 and Murray exercised five sets of stock options that were awarded in prior years, all of which resulted in income to him.

¶ 12 Sharon's employment since the divorce "has been off and on" and as of November 2011, Sharon worked a temporary job with Wells Fargo at $24 per hour. However, Sharon was training for a full-time, commission-based sales position. Her new husband was working to develop his optical business, which he financed with the help of Sharon, who took a six-figure withdrawal from her equity line leaving her around $16,000. This business had not yet turned a profit at the time of the hearing.

¶ 13    Sharon also testified that although her new husband now resides with her and the children, her expenses in the home have not increased as a result since Count contributes to food expenses and pays for his own car, clothes, grooming, and insurance.   She stated that thus far she has paid for all of Brian's tuition, books, fees, lunches, cell phone, football and camp expenses, and other sports activities.   She has also paid Melissa's tuition, books, fees, and fees and costs associated with extracurricular activities including dance, theater, and baseball. Although Murray contributes to Heather's soccer expenses, Sharon has paid for her volleyball activities.   Sharon also testified that she pays for all car insurance, gas to and from school, and parking.   She stated that in 2011 the children's educational expenses totaled more than $6,100 and Murray has reimbursed $500 to $600 of that amount.   Melissa is also in need of orthodontic work.

¶ 14    After all of the evidence was presented, the trial court determined that Murray's total gross income for 2011 was $254,267 and after running a FinPlan analysis, it found that his net income for child support purposes was $176,146.   Using the applicable guideline support percentages contained in the Act (32% of Murray's net income), the trial court ordered support for the three minor children of $4,647 per month.   After Brian's graduation, the amount reduces to $4,110 per month and after Melissa's emancipation, it further reduces to $2,936 per month until Heather's emancipation.

¶ 15    Regarding payment for the children's activities, the trial court found that the parties met with parenting coordinators and/or mediators but could not resolve the issue.   The trial court modified the judgment to define "curricular," "extracurricular" and "summer camp" as used in the MSA.   It also removed the original paragraph 7.8, dealing with the children's activities, and, relevant to this appeal, entered the following text:

"b. Murray shall pay $2500 by May 1st each year to Sharon as his share of the cost of their daughters' summer activities (this amount includes any camp costs). Sharon will pay any additional summer activity costs. After Melissa emancipates, Murray's contribution will be reduced to $1250 for Heather's summer activities.

c. Murray shall additionally pay Sharon the flat sum of $200/month year-round toward the costs of their minor daughters' school-year activities (other than those covered by subparagraphs d, e, or f). Sharon will pay any additional costs. When Melissa emancipates, Murray's monthly payment will be reduced to $100/month. Murray's last monthly payment will be due the month Heather emancipates."

The trial court further ordered that the parties split 50/50 the costs of required school fees, books, supplies, uniforms or equipment, and the costs of graduation, senior prom and other school-related celebrations. It also ordered Murray to contribute 80% of the orthodontia expenses unreimbursed by insurance "in recognition of his larger income."

¶ 16    Finally, the trial court ordered that pursuant to the MSA Murray's obligation to pay unallocated support and maintenance terminated on March 1, 2010, due to Sharon's cohabitation. It ordered Sharon to reimburse Murray $22,500 within one year for the gross bonus payment made to her in 2010. The trial court also found that "[e]ffective May 19, 2010, Murray shall owe Sharon the difference between the $4400 in child support he already has paid monthly and any additional amounts due under this order. The $22,500 amount Sharon owes Murray shall be reduced by any additional amounts owing under this paragraph for child support." On August 15, 2012, Murray filed a motion to vacate or reconsider the court's July 16, 2012, order.

¶ 17    On August 21, 2012, Sharon filed an amended motion for contribution to attorneys fees and costs. In support of her motion, Sharon alleged that she incurred substantial fees and costs

due to Murray's actions throughout the discovery process, namely, his failure to produce records of the children's accounts and his failure to update his financial disclosure statement. Sharon further argued that a great disparity in income and assets exists between her and Murray, and this factor is "critical" in determining whether Murray must contribute to her attorney fees and costs.

¶ 18    At the hearing on Sharon's fee petition, the evidence showed that in 2011 Murray's gross income was $254,267 and Sharon's gross income was $55,000. At the time of the hearing, Sharon's fees totaled $107,677 of which she still owed $34,840. Murray had paid his attorneys $86,000. Sharon testified that she had liquid assets around $11,000 and retirement and Roth IRA funds totaling $837,000. She acknowledged that she loaned her new husband money from her equity line to start a business, but stated that at the time she did not know she would be in litigation with Murray for three more years. Murray testified that he contributed more than $20,000 to his retirement funds in 2012 and received options from Kraft totaling about $60,000 pretax if he exercised those options. At the time of the hearing he had $1,695,654 in retirement and Roth IRA accounts. The evidence also showed that Murray's monthly expenses totaled $19,000 per month and Sharon's expenses amounted to just over $11,000 per month.

¶ 19    On January 10, 2013, the trial court entered its order on Sharon's fee petition. It found that "Sharon is unable to pay her full attorneys' fees but is able to pay more than she has to date." It also found that Murray "has the ability to pay additional fees and costs" due to his "much larger income, extensive transfers of disposable income into retirement accounts and overstated expenses of over $18,000/month when the full-time household is smaller than Sharon's." The trial court ordered Murray to contribute $25,000 to Sharon's fees and costs, pursuant to section 508(a) of the Act. 750 ILCS 5/508(a) (West 2010). The trial court denied Sharon's request for

a larger contribution from Murray, "due to [Sharon's] own resources and spending that is subject to future reduction to pay fees without undue hardship."

¶ 20    On January 15, 2013, the trial court denied Murray's motion to vacate or reconsider its July 16, 2012, order.    On February 6, 2013, Murray filed his timely notice of appeal from both the July 16, 2012, order and the January 10, 2013, order on Sharon's fee petition.

¶ 21                                                 ANALYSIS

¶ 22    Murray contends on appeal that the trial court erred in calculating his income for purposes of child support.    "The findings of the trial court as to net income and the award of child support are within its sound discretion and will not be disturbed on appeal absent an abuse of discretion."    *In re Marriage of Breitenfeldt*, 362 Ill. App. 3d 668, 675 (2005).    The trial court abuses its discretion when no reasonable person would take its view.    *In re Marriage of Eberhardt*, 387 Ill. App. 3d 226, 233 (2008).

¶ 23    First, Murray contends that the trial court erred when it failed to consider the financial resources of Sharon's new husband, Kevin Count.    Murray further complains that the child support he pays to Sharon is being used in part to support Count.    There is no indication in the record that Murray raised these issues before the trial court during the hearing on Sharon's petition to modify, nor did he include them in his motion to vacate or reconsider the court's July 16, 2012, order.    Arguments raised for the first time on appeal are waived.    *Id*. at 236. Nonetheless, Sharon testified that although he lives in the residence with her and the children, Count is responsible for his own expenses and no evidence was presented that Sharon and Count comingled their assets or financial resources.    See *In re Marriage of Drysch*, 314 Ill. App. 3d 640, 645-46 (2000) (although the court acknowledged that a new spouse has no legal obligation to support his stepchildren, where petitioner and her new spouse "pooled their income and

money to pay their family expenses" it may be necessary to consider the new spouse's income when determining petitioner's financial resources for purposes of child support). Again, no evidence was presented of commingling or pooling.

¶ 24    Murray next contends that the trial court erred in calculating his income for child support purposes. First, he argues that the trial court looked solely at his 2011 income "which included disputed items which significantly increased" his income for that year. Instead, the trial court should have looked at his 2010 income "and used that calculation to set guidelines support at least for 2010." Murray does not cite to any cases that support his argument, in violation of Illinois Supreme Court Rule 341(h)(7) (arguments made must be accompanied by citations to authority and to the relevant pages in the record, or they are waived). Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). In any event, our supreme court has held that the relevant focus for determining income under section 505 of the Act "is the parent's economic situation at the time the child support calculations are made by the court." *In re Marriage of Rogers*, 213 Ill. 2d 129, 138 (2004). Since the trial court held the hearing in 2011, it properly focused on Murray's income for that year in determining his income for child support purposes.

¶ 25    Murray next argues that the trial court improperly included $5,000 that he converted from a traditional IRA to a Roth IRA as income when he received no funds from the conversion. Murray does not indicate in the record where the trial court considered this evidence, or its reasoning, in violation of Rule 341(h)(7). He also fails to cite to any authority stating that a conversion of funds from an IRA to a Roth IRA does not constitute income for child support purposes. He simply argues that he did not receive funds and thus received no benefit. However, as Sharon points out, the conversion to a Roth IRA is a taxable event indicating some type of benefit or income to Murray. Section 505(a)(3) defines net income for child support

purposes as "the total of all income from all sources." 750 ILCS 5/505(a)(3) (West 2010). The trial court did not abuse its discretion when it included the $5,000 as income.

¶ 26 Third, Murray contends that the trial court erred in estimating his annual income from dividends when it took the dividends earned in the first quarter of 2011 and multiplied that amount by four for a total of $3,672. Murray argues that he actually received only $1,212 in total dividends in 2011. The exact amount of future dividend income may be subject to change and is uncertain. However, in determining income for child support purposes, the trial court has the authority to compel a party to pay at a level commensurate with his earning potential. *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 106 (2000). If present income is uncertain, the trial court may impute income to the payor. *Id*. When the trial court made its calculations regarding Murray's net income for 2011, it had only the first-quarter dividend earnings of $918. By estimating that Murray's dividend income for 2011 would be $918 multiplied by four, or $3,672, the trial court acted within its authority to estimate a party's income for child support purposes. Although Murray did not actually earn as much in dividend income in 2011, he could very well earn more than that amount in another year.

¶ 27 Murray also contends that the inclusion of this dividend income was erroneous because it represented a one-time payment to him. The mutual funds and restricted stock which paid the dividends were liquidated in January 2012, and he will never again earn dividend income from these sources. A one-time payment can be considered income, although the "nonrecurring nature" of the payment may be a factor in how the trial court allocates the payment. *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 24. When a party's net income consists of a nonrecurring payment, the trial court may consider a deviation from the Act's support guidelines is necessary. *Id*. ¶ 25. However, it is up to the payor to request the deviation. *Id*.

- 11 -

¶ 28    Murray argues that he should not have had to request a deviation from guidelines support without notice that he was required to make such a request.   He contends that no party asked for a deviation and the trial "court cannot *sua sponte* adjudicate an issue."   We are not persuaded by Murray's argument.   Section 505(a) of the Act sets forth guidelines for the minimum amount of support (as a percentage of the supporting party's net income) according to the number of children involved.   750 ILCS 5/505(a) (West 2010).   The guidelines create a rebuttable presumption that child support conforming to the guidelines is appropriate.   *In re Marriage of Adams*, 348 Ill. App. 3d 340, 343 (2004).   This presumption also applies in modification proceedings.   *People ex rel. Hines v. Hines*, 236 Ill. App. 3d 739, 745 (1992).   If a deviation is sought, the party seeking the deviation bears the burden of showing a compelling reason to justify the deviation.   *Roper v. Johns*, 345 Ill. App. 3d 1127, 1130 (2004).   The trial court here set support at the guideline amount, which is presumed appropriate.   If Murray disagreed with the guideline amount, for any reason, he needed to request a deviation and prove why a deviation was required.   There is no language in the Act stating that he must be notified of his responsibility to seek a deviation from the guidelines.   There is no indication in the record that Murray requested a deviation from the guidelines.   The trial court did not abuse its discretion in estimating Murray's 2011 dividend earnings.

¶ 29    Murray next contends that the trial court improperly converted marital property awarded to him in the dissolution judgment to income for child support purposes.   Specifically, Murray challenges the inclusion of $58,864.45 from stock option sales in 2011, in determining his income.   He argues that the parties' MSA explicitly prohibits such earnings from income for child support purposes.   Furthermore, he alleges that the trial court ignored Sharon's earnings

from such sources. There is no evidence in the record that the trial court did not consider such income for Sharon, or even that she had such income, in 2011.

¶ 30 Murray's claim that the MSA contains a provision that "[a]ll restricted stock and stock options awarded to Murray or Sharon as an award of his/her share of the marital estate *** shall not be deemed income for child support purposes" is true. This provision precluding certain sources of income from consideration for child support purposes is against Illinois public policy and is thus void. We shall not enforce it. Section 502(f) of the Act ensures that child support is always modifiable upon a showing of substantial change in circumstances. 750 ILCS 5/502(f) (West 2010); see also *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1064 (2007). Although parties may agree to the terms relating to their children's custody, support, and visitation, they may not circumvent the trial court's authority to determine whether in the future the best interests of the children require a modification of those terms. *Id*. "[T]he primary objective of the court is to provide adequate support for" the children. *In re Marriage of Hart*, 194 Ill. App. 3d 839, 849 (1990). The trial court here acted within its authority when it modified that provision and included earnings from Murray's sale of restricted stock options as income for child support purposes.

¶ 31 Murray contends, however, that it is fundamentally unfair to include this income because he was awarded the restricted stock options as marital property in the dissolution judgment and, by receiving a portion of the income from the sale, Sharon is "double dipping." He argues that Sharon received her portion of the stocks as marital property and now she is receiving as child support a portion of Murray's income from his share. This is not "double dipping." The trial court can consider marital property as income for child support purposes, even if the income comes from vested stock options awarded as marital property to one of the parties. *In re*

*Marriage of Colangelo*, 355 Ill. App. 3d 383, 390 (2005); see also *In re Marriage of Klomps*, 286 Ill. App. 3d 710, 714-15 (1997).

¶ 32    Murray disagrees that *Colangelo* applies, arguing that, unlike the stock options at issue here, the deferred compensation in *Colangelo* was "not valued, not listed in the agreement, not separately split between the parties, nor separately saleable."   We note that Murray does not support this argument with any citations to authority.   Nonetheless, the court in *Colangelo* did not base its determination on the type of deferred compensation at issue before it, but on the fact that deferred compensation and retirement benefits are income and they are not listed in the Act as an applicable deduction from income.   *Colangelo*, 355 Ill. App. 3d at 392.   The trial court acted correctly and did not abuse its discretion in finding that Murray's earnings from restricted stock option sales in 2011 constituted income for child support purposes.

¶ 33    Murray also challenges the trial court's determination making the modified child support payments retroactive to March 2010, even though "[he] had not yet received this income in 2010."   First, we note that Murray does not cite to supporting authority for his argument in violation of Rule 341(h)(7).   In any event, no error occurred here.   The trial court is authorized to order retroactive payments pursuant to section 510(a) of the Act.   *In re Marriage of Hawking*, 240 Ill. App. 3d 419, 426 (1992).   "[T]he earliest point to which retroactive modification of maintenance or support payments may be ordered is the date on which the nonmoving party receives 'due notice' from the moving party of the filing of the modification petition."   *Id*.   The record indicates that Murray received notice of Sharon's petition to modify on May 19, 2010.   The trial court's amended order made the modified payments retroactive to May 19, 2010, not March of 2010.   Therefore, the trial court acted correctly and did not abuse its discretion in making the modified payments retroactive to May 19, 2010.

¶ 34    Finally, Murray contends that the trial court's award of $2,500 per year for the children's summer activities and $200 per month for activities throughout the year improperly constitute a windfall to Sharon.    He complains that he is paying more than Sharon actually spends on the activities and there is no provision in the order for reimbursement for moneys not spent. Murray also challenges the trial court's order that he pay 80 percent of the orthodontia expenses unreimbursed by insurance.    Murray does not cite any authority to support his contentions in violation of Rule 341(h)(7) and thus has waived review of this issue.    *Roiser v. Cascade Mountain, Inc.*, 367 Ill. App. 3d 559, 568 (2006).    However, even on the merits, he does not prevail.    The trial court noted the contentious relationship between Murray and Sharon and determined that it was in the best interest of the children to resolve the issues relating to the children's activities.

¶ 35    In determining support payments, the trial court may consider the children's standard of living had the marriage not been dissolved even though this level of support may extend beyond base financial need.    *In re Marriage of Bussey*, 108 Ill. 2d 286, 297 (1985).    Participation in these activities would have been the norm for Murray's children had he and Sharon not divorced. Murray protests that the amount he must pay is more than what was actually expended in a given year; however, in the future the expenditures may amount to more than his required payments. As to its determination that he pay 80% of the orthodontia expenses unreimbursed by insurance "in recognition of his larger income," the trial court did not err.    Although child support is the obligation of both parents, if one parent earns a disproportionately greater income than the other he or she should bear a larger share of the support.    *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 38 (1997).    The evidence showed that in 2011 Murray's gross income was $254,267 and Sharon's gross income was $55,000.    The trial court did not abuse its discretion.

¶ 36    Murray next contends that the trial court erred in awarding Sharon attorney fees and costs because she has not shown an inability to pay. The trial court may award attorney fees associated with proceedings under the Act if one party lacks financial resources and the other party has the ability to pay. See 750 ILCS 5/508 (West 2010). However, the party seeking contribution must establish an inability to pay and the other party's ability to do so. *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005). "Financial inability exists where requiring payment of fees would strip that party of her means of support or undermine her financial stability." *Id*. Since the "trial court is in a superior position to assess the credibility of witnesses and weigh the evidence, a reviewing court will not overturn the trial court's findings merely because the reviewing court may have reached a different decision." *In re April C*., 326 Ill. App. 3d 245, 257 (2001). A reviewing court will reverse the trial court's determination to award or deny fees only if it abused its discretion. *Schneider*, 214 Ill. 2d at 174.

¶ 37    First, we note that under the MSA, Murray and Sharon agreed to pay for their own attorney fees and costs. Courts generally uphold this type of provision if the parties entered into the agreement freely and the agreement is approved by the trial court. See *In re Marriage of Kessler*, 110 Ill. App. 3d 61, 75 (1982). However, the court in *Kessler* indicated that if a petitioner showed an inability to pay, the effect of such a provision would render it void as against public policy. *Id*.

¶ 38    Here, the evidence showed that in 2011 Murray's gross income was $254,267 and Sharon's gross income was $55,000. At the time of the hearing, Sharon's fees totaled $107,677 of which she still owed $34,840, and Murray had paid his attorneys $86,000. Sharon had liquid assets around $11,000 and retirement and Roth IRA funds totaling $837,000. Murray testified that he contributed more than $20,000 to his retirement funds in 2012 and received options from

Kraft totaling about $60,000 pretax if he exercised those options. At the time of the hearing he had $1,695,654 in retirement and Roth IRA accounts. The evidence also showed that Murray's monthly expenses totaled $19,000 per month and Sharon's expenses amounted to just over $11,000 per month.

¶ 39    The trial court found that "Sharon is unable to pay her full attorneys' fees but is able to pay more than she has to date." It also found that Murray "has the ability to pay additional fees and costs" due to his "much larger income, extensive transfers of disposable income into retirement accounts and overstated expenses of over $18,000/month when the full-time household is smaller than Sharon's." The trial court ordered Murray to contribute $25,000 to Sharon's fees and costs but denied Sharon's request for a larger contribution from Murray, "due to [Sharon's] own resources and spending that is subject to future reduction to pay fees without undue hardship." The trial court did not abuse its discretion in awarding Sharon $25,000 in fees and costs.

¶ 40    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 41    Affirmed.

## CORRECTION SHEET

This opinion was corrected typographically on:    <u>August 27, 2014</u>

The original text was totally preserved.

## <u>FIRST CORRECTION</u>

## <u>PRIORITY</u>

CORRECTIONS ON:                                     Opinion    <u>X</u>    Rule 23 <u>_____</u>

Case No. 1-13-0465

Date Decision Issued:    August 12, 2014

Case Name:    *In re* Marriage of Sharon Pratt and Murray Pratt

Editing Justice:    Sheldon A. Harris

| *Routing* | *Date* | *Sent by* | *Received by* |
|---|---|---|---|
| **Originating Secretary** | 08/27/14 | **Lisa Ranson** | |
| **Correction sheet and full set of corrected opinions/rules sent to clerk's office.** | | | |
| **Corrected opinion/rule and correction sheet to secretary.** | | | |

1.    Submit a one-sided, corrected copy of the opinion or rule 23 order.
2.    Below, identify, each correction by page and line numbers, e.g., page 5 line 10, from top (or from bottom.)

CORRECTION(S):

Page 1, caption:    Reversed the names in caption.

Throughout the remaining of the document, no substantive changes.

Style manual corrections.