# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Goesel*, 2017 IL App (3d) 150101

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF CHRISTINE GOESEL, Petitioner-Appellee, and ANDREW GOESEL, Respondent (Laura A. Holwell, Contemnor-Appellant). |
| District & No. | Third District<br>Docket No. 3-15-0101 |
| Filed | January 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-D-107; the Hon. Dinah L. Archambeault, Judge, presiding. |
| Judgment | Disgorgement order reversed; contempt orders vacated; cause remanded. |
| Counsel on Appeal | Gina L. Colaluca, of Chicago, for appellant.<br><br>Mark Ellis, Martin Rudman, and Edward R. Jaquays, of Law Offices of Edward R. Jaquays, of Joliet, for appellee.<br><br>Howard M. LeVine, of LeVine, Wittenberg, Shugan & Schatz, Ltd., of Tinley Park, for respondent.<br><br>Nancy Donlon, of Panos & Associates LLC, of Palos Heights, guardian *ad litem*. |

JUSTICE CARTER delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justice Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal arises from the dissolution of marriage proceedings between petitioner, Christine Goesel, and respondent, Andrew Goesel. Contemnor, Laura Holwell, served as an attorney for Andrew. After Christine filed a petition for interim attorney fees, the trial court found that neither Andrew nor Christine had the current ability to pay attorney fees and ordered Holwell to disgorge $40,952.61 of attorney fees that Andrew had paid to her. Holwell did not pay the disgorgement amount, and the trial court held her in contempt. On appeal, Holwell argues that the trial court erred in ordering the disgorgement of fees from her, finding the disgorgement order was a judgment, and holding Holwell in indirect civil contempt. Holwell also argues that the contempt orders and sanctions entered against her should be vacated because her refusal to comply with the disgorgement order constituted a good-faith effort to determine if the disgorgement was proper. We reverse the disgorgement order and vacate the trial court's order finding Holwell in contempt of court.

¶ 2 FACTS

¶ 3 Christine and Andrew were married on March 4, 1995. On January 18, 2013, Christine filed for divorce. Christine was represented by the firm Goldstine, Skrodzki, Russian, Nemec and Hoff, Ltd. (Goldstine), and Andrew was represented by Janice Boback of Anderson & Boback, LLC (Boback). During the dissolution proceedings, Christine lived in the marital home. Christine's attorneys instructed her to provide them Andrew's mail that arrived at the marital home. Goldstine then opened and viewed Andrew's mail.

¶ 4 On October 10, 2013, Laura Holwell, the contemnor in this matter, filed her appearance as Andrew's counsel, and Boback was granted leave to withdraw. Prior to withdrawing, Boback filed a motion to disqualify Goldstine as Christine's counsel because the firm had obtained privileged information about Andrew by viewing his mail. The trial court eventually disqualified Goldstine on March 4, 2014. Holwell billed $37,094.49 to Andrew for work related to the disqualification of Goldstine. Goldstine did not charge Christine for its defense of the motion to disqualify.

¶ 5 On March 10, 2014, the Law Offices of Edward R. Jaquays (Jaquays) appeared on behalf of Christine. On June 6, 2014, Howard LeVine of LeVine, Wittenberg, Shugan and Schatz, Ltd. (LeVine), appeared on behalf of Andrew. On June 12, 2014, Christine filed a petition for interim attorney fees, which she later amended. Within the amended petition, Christine indicated that she paid Jaquays an initial retainer of $5000, currently owed Jacquays $27,142.60, and lacked sufficient funds to pay the outstanding fees. Christine requested that the trial court either order Andrew to pay her attorney fees or, if the court found that Andrew lacked the ability to do so, enter an order disgorging the necessary amount from the money that Andrew had already paid to Holwell. Andrew also filed a petition for attorney fees, indicating that he did not have the ability to pay his attorney fees.

¶ 6    On June 20, 2014, Holwell filed a motion to withdraw as Andrew's counsel. In response, Christine requested that the trial court condition its grant of Holwell's leave to withdraw upon the disgorgement of attorney fees. On June 27, 2014, the trial court issued an order allowing Holwell to withdraw but retained jurisdiction over Holwell should the court find disgorgement to be an issue, with Holwell to be notified of future dates pertaining to the disgorgement issue.

¶ 7    From July 29 to July 31, 2014, at the hearing on Christine and Andrew's petitions for attorney fees, Holwell provided testimony, and the parties provided financial disclosures. With regard to real estate, the financial disclosures indicated that (1) the parties' marital residence was valued at $440,000, and there was a mortgage balance of $350,000 that was four months in arrears; (2) the parties' investment real estate in Florida had approximately $60,000 in equity; (3) Christine had a Michigan home with an unknown value that Andrew "gifted" to her; and (4) there was investment or business real estate valued at $150,000 that was in arrears in association dues and property taxes. The financial disclosures also indicated that the parties owned four motor vehicles, with a total value of $30,500. Christine had a checking account with a balance of $4610.99, and Andrew had two checking accounts with a combined balance of $50. The financial disclosures further indicated Andrew had an individual retirement account (IRA) with a fair market value between $2000 and $4000 and a health savings account (HSA) with a fair market value of $12,000. Christine had multiple retirement accounts including (1) a Roth IRA with an unknown fair market value, (2) an IRA with a fair market value of $32,819.88, (3) a 403(b) plan with a fair market value of $42,498.86, (4) a 401(a) plan with a fair market value of $13,292.21, (5) a rollover plan with a fair market value of $3838.04, (6) a 403(b) plan with a fair market value of $27,954.71, and (7) a retirement and savings plan with a fair market value of $17,356.23. Christine had $16,339.12 in credit card debt and owed $34,560.86 in attorney fees. After expenses, Christine's net monthly income was $362.94. Her monthly income included a court-ordered support payment of $3500, but her expenses did not reflect the monthly mortgage payment for the marital home or the Florida rental home's expenses. Andrew owed creditors approximately $17,150, and his business, Goesel Chiropractic, owed creditors approximately $69,180. The amount he owed to his attorneys was "unknown." The difference between Andrew's monthly income and expenses was a negative amount of $3318.44.

¶ 8    At the outset of the hearing for interim attorney fees, the parties stipulated to the attorneys' rates and that the work performed by the attorneys was reasonable and necessary. Holwell testified she was holding approximately $13,000 that Andrew had previously paid to Boback and Boback then paid to Holwell because there was a dispute as to which party owned the money. Copies of Holwell's invoices were entered into evidence and indicated that all money she had received was for work already performed. Andrew still owed Holwell $17,500.38 and owed Levine $26,000. Levine was holding $10,000 received for work already performed because there was a question as to whether the money was paid from a proper source.

¶ 9    On September 29, 2014, the trial court found that both parties currently lacked the financial ability to pay reasonable attorney fees. The trial court determined that the total attorney fees paid by the parties, as of September 29, 2014, was $118,193.31 and each party should be allotted $59,069.65 for their attorney fees. To achieve parity, the trial court ordered that Holwell disgorge $40,952.61 of fees paid to her by Andrew, which were to be tendered to Christine's attorneys within 14 days of the order.

¶ 10         On October 24, 2014, Christine filed a petition for the trial court to enter an order of indirect civil contempt with sanctions against Holwell because Holwell had not paid any money toward the disgorgement order. On December 18, 2014, in response to the petition, the trial court clarified that the disgorgement order was a judgment and held Holwell in "friendly" contempt of court. On January 13, 2015, Christine filed a motion for sanctions to be imposed against Holwell because the contempt order was not immediately appealable without a penalty. On January 16, 2015, the trial court found Holwell to be in indirect civil contempt and sentenced her to an indeterminate jail sentence, which was to be stayed for 30 days during the pendency of an appeal. A fine of $10 per day was to be imposed for each day the jail time was stayed. The trial court also indicated that Holwell could purge the contempt by paying $40,952.61 to Christine's attorneys by January 21, 2015. On January 21, 2015, the trial court found that Holwell failed to purge herself of contempt, and the order of contempt was found to be final and appealable. Holwell appealed.

¶ 11                                              ANALYSIS

¶ 12         On appeal, Holwell argues that the trial court erred in (1) ordering disgorgement of her fees because it failed to make a specific finding with respect to Christine's ability to pay, the evidence showed Christine had the ability to pay, and Holwell was deprived of notice and an opportunity to be heard; (2) finding the disgorgement order was a judgment because disgorgement orders are temporary advances against the marital estate; and (3) holding Holwell in indirect civil contempt because it deprived Holwell of her right to notice and a hearing and the trial court failed to inquire into Holwell's ability to comply with the disgorgement order. Holwell also argues that the contempt orders and sanctions entered against her should be vacated because her refusal to comply with the disgorgement order constituted a good-faith effort to determine if the disgorgement was proper.

¶ 13         A court order granting interim attorney fees is not an appealable interlocutory order. *In re Marriage of Radzik*, 2011 IL App (2d) 100374, ¶ 45. However, when the trial court has issued a contempt sanction for violating an interim fees order, the contempt finding is final and appealable. *Id.* In this case, Holwell timely appealed from the trial court's order finding her in contempt, which was a final and appealable order.

¶ 14                        A. The Parties' Inability to Pay Attorney Fees

¶ 15         On appeal, Holwell contends that the trial court erred in ordering disgorgement of attorney fees from her, which had been paid to her by Andrew, because the trial court failed to make a specific finding with respect to Christine's ability to pay and the evidence showed Christine had the ability to pay. The record shows that after a three-day hearing, the trial court specifically indicated in its order of September 29, 2014, that it found neither party had the current ability to pay attorney fees. Thus, we find Holwell's argument that there was no specific finding of Christine's inability to pay attorney fees to be without merit. We, thus, turn our attention to a review of the trial court's finding that neither party had a current ability to pay attorney fees and its award of interim attorney fees by way of disgorgement.

¶ 16         The standard for reviewing a trial court's award of attorney fees is for an abuse of discretion. *In re Marriage of Beyer*, 324 Ill. App. 3d 305, 320 (2001). An abuse of discretion occurs "only when no reasonable person would take the view adopted by the court." *In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 433 (1993). This court will not overturn the trial

court's decision merely because it may have reached a different decision. *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 36. The " 'trial court is in a superior position to assess the credibility of witnesses and weigh the evidence.' " *Id.* (quoting *In re April C.*, 326 Ill. App. 3d 245, 257 (2001)).

¶ 17    It is well settled that financial inability to pay attorney fees is not equivalent to having no assets or no income available. See *In re Marriage of Schneider*, 214 Ill. 2d 152, 174 (2005) ("[f]inancial inability exists where requiring payment of fees would strip that party of her means of support or undermine her financial stability"); *In re Marriage of Marthens*, 215 Ill. App. 3d 590, 599 (1991) ("it [is not] necessary for a spouse seeking such [attorney] fees to divest herself of capital assets or deplete her means of support and thereby undermine her economic stability"); *In re Marriage of Vance*, 2016 IL App (3d) 150717, ¶ 61 (" 'financial inability does not mean destitution; the spouse need not exhaust his or her own estate' " (quoting *In re Marriage of Los*, 136 Ill. App. 3d 26, 33-34 (1985))).

¶ 18    In this case, the only evidence of Andrew and Christine's assets, income, and expenses was their financial disclosure statements, which neither party disputed. Christine's financial disclosure statement indicated a net monthly income of $7658.38 and monthly expenses of $7295.44 (not including a mortgage payment for the marital residence). Andrew's financial disclosure statement indicated a net monthly income of $3343.56 and monthly expenses of $4166.66. Thus, the record supports the trial court's finding that neither Andrew nor Christine had access to income for payment of reasonable attorney fees.

¶ 19    Holwell argues that Christine had access to retirement accounts and real estate as a means for paying attorney fees. Section 12-1006 of the Code of Civil Procedure (Code) provides that a debtor's interest in or right to the assets in a retirement plan is exempt from judgment. 735 ILCS 5/12-1006 (West 2014). Section 15(d) of the Income Withholding for Support Act provides an exception to section 12-1006 of the Code for the collection of child support or spousal maintenance, but there is no such exception for interim attorney fees. 750 ILCS 28/15(d) (West 2014); *Jakubik v. Jakubik*, 208 Ill. App. 3d 119, 125-26 (1991) (holding "only support obligations enjoy the exception from property exemption" and explaining that "Illinois' public policy favors the payment of child support and maintenance obligations from exempt property to promote the support of the family, not the support of the attorneys"); *Radzik*, 2011 IL App (2d) 100374, ¶¶ 61-62 (concluding that the 1997 "leveling of the playing field" amendments to the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2008)) "merely overhauled the methods by which and timing of when attorneys may obtain fees" but did not alter the rule that section 12-1006 of the Code exempts retirement accounts from being used for collection of judgments). We, therefore, find that the trial court did not have discretion to consider Christine's retirement assets when determining her ability to pay attorney fees.

¶ 20    We also find Holwell's argument that the trial court should have ordered Christine to sell real estate assets to pay attorney fees to be without merit. A spouse requesting interim attorney fees does not need to be destitute, and "neither party's estate should be exhausted, nor their economic stability undermined." *Radzik*, 2011 IL App (2d) 100374, ¶ 51 n.4; *Schneider*, 214 Ill. 2d at 174 (finding that "[f]inancial inability exists where requiring payment of fees would strip that party of her means of support or undermine her financial stability"). An inability to pay is determined "relative to the party's standard of living, employment abilities, allocated capital assets, existing indebtedness, and income available from investments and

maintenance." *In re Marriage of Carr*, 221 Ill. App. 3d 609, 612 (1991). Inability to pay "does not require a showing of destitution nor does it require the fee-seeking spouse to divest himself or herself of capital assets." *In re Marriage of Kennedy*, 214 Ill. App. 3d 849, 861-62 (1991); *In re Marriage of Pond*, 379 Ill. App. 3d 982, 992 (2008) (finding that the spouse clearly demonstrated that she was "unable to pay her attorney fees without invading her capital assets or undermining her financial stability"). Additionally, the trial court may not order a marital asset sold to directly satisfy an obligation for attorney fees. See *In re Marriage of Walsh*, 109 Ill. App. 3d 171, 176-77 (1982); *In re Marriage of Shen*, 2015 IL App (1st) 130733, ¶¶ 92, 116 (providing "a court may not order payment of attorney fees directly from the marital estate" and finding that the trial court's order for the husband's 401(k) to be liquidated to pay for interim attorney fees was "in contravention of *Radzik* and section 12-1006 of the Code"). Based upon our review of the record, the trial court did not abuse its discretion in finding that Christine did not have the ability to pay attorney fees.

¶ 21    Holwell argues that the parties had an ability to pay their attorney fees as of the date of the hearing because the trial court subsequently issued an order allowing the parties to pay their attorneys from a source other than the home equity line of credit. The order provided that by agreement of the parties, Christine and Andrew could pay their attorneys from funds other than the line of credit, with authorization to do so retroactively to August 15, 2014. However, nothing in the order indicated that either party had the ability to pay attorney fees as of the July hearing dates or that the trial court had made a specific finding as to available income or assets. Thus, we find that the trial court did not abuse its discretion in finding that neither party had the ability to pay attorney fees.

¶ 22                          B. Disgorgement of Earned Attorney fees

¶ 23    On appeal, Holwell also argues that the trial court did not have the authority to order disgorgement of attorney fees that were previously paid to her by Andrew for services already rendered. The award of interim attorney fees is governed by section 501(c-1)(3) of the Act. 750 ILCS 5/501(c-1)(3) (West 2014). Pursuant to section 501(c-1)(3), an attorney may only be required to disgorge his or her fees if both parties "lack financial ability or access to assets or income for reasonable attorney[ ] fees and costs." 750 ILCS 5/501(c-1)(3) (West 2014). Where there is a lack of financial ability of both parties to pay reasonable attorney fees, the trial court "shall enter an order that allocates available funds for each party's counsel, including retainers or interim payments, or both, previously paid, in a manner that achieves substantial parity between the parties." 750 ILCS 5/501(c-1)(3) (West 2014). For purposes of disgorgement, it does not matter whether the retainer or interim fees came for the marital estate, from parents, or from others. *In re Marriage of Earlywine*, 2013 IL 114779, ¶¶ 30-31. By analogy to section 510(a) of the Act, any order with respect to disgorgement can only impact available retainer or interim fee funds subsequent to due notice by the moving party of the filing of the petition for interim fees. See 750 ILCS 5/510(a) (West 2014) (providing that a judgment regarding a maintenance or support obligation may be modified "only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification").

¶ 24    Here, the trial court's order for the disgorgement of funds paid to Holwell by Andrew for legal services and for Holwell to tender those funds to Christine's attorney was made pursuant to section 501(c-1)(3) of the Act. See 750 ILCS 5/501(c-1)(3) (West 2014). We review the appeal from the award of attorney fees that hinges on the interpretation of a statute *de novo*.

See *In re Marriage of Nash*, 2012 IL App (1st) 113724, ¶ 15 (finding that the standard of review for the award of attorney fees is *de novo* when the award hinges on issues of statutory construction). As set forth by the Illinois Supreme Court, the primary objective of statutory interpretation is to give effect to the intent of the legislature, and the most reliable indicator of intent is the language of the statute given its plain, ordinary, and popularly understood meaning. *In re Marriage of Rogers*, 213 Ill. 2d 129, 136 (2004). To this end, a court may consider the reason and necessity for the statute and the evils it was intended to remedy, and the court will assume the legislature did not intend an absurd or unjust result. *People v. Pullen*, 192 Ill. 2d 36, 42 (2000).

¶ 25    Looking to the plain language of section 501(c-1)(3) of the Act, trial courts have the authority to "enter an order that allocates *available* funds for each party's counsel, including retainers or interim payments, or both, previously paid." (Emphasis added.) 750 ILCS 5/501(c-1)(3) (West 2014). The legislature's use of the term "available" implies that some funds may be "unavailable." *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21 ("reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous"). We find the most reasonable interpretation of the term "available funds," as that term relates to previously paid "retainers or interim payments" to an attorney as used in section 501(c-1)(3) of the Act, are those funds that are currently being held for a client that have not yet been earned by the attorney at the time the attorney is given notice of the petition for interim attorney fees and would be "available" to be returned to the client if the attorney were to immediately cease services. Finding otherwise would render the term "available" superfluous because earned funds paid to the attorney may have already been lawfully spent by the attorney and, thus, not "available" due to no fault of the attorney.

¶ 26    We acknowledge that the purpose of interim attorney fees is "to achieve substantial parity in parties' access to funds." 750 ILCS 5/102(8), 501(c-1)(3) (West 2014). The interim fee system was created to address the problem of the " 'economically disadvantaged spouse,' " where one spouse uses his or her greater control of assets or income as a litigation tool, making it difficult for the disadvantaged spouse to adequately participate in the litigation. *Earlywine*, 2013 IL 114779, ¶ 26 (quoting *In re Minor Child Stella*, 353 Ill. App. 3d 415, 419 (2004), citing *A General Explanation of the "Leveling of the Playing Field" in Divorce Litigation Amendments*, 11 CBA Rec. 32 (1997)). The timely filing of a petition for interim fees would significantly advance the attempt to achieve parity in the parties' access to funds. *Id.*

¶ 27    Additionally, Illinois Rule of Professional Conduct 1.15 (eff. July 1, 2015), which governs an attorney's receipt of advance payment of attorney fees, supports our conclusion that attorney fees that have already been earned are not "available" for disgorgement under section 501(c-1)(3) of the Code. Illinois Rule of Professional Conduct 1.15(a) requires that an attorney hold a client's property that is in the attorney's possession in connection with the representation of that client separate from the attorney's own property. Ill. R. Prof'l Conduct (2010) R. 1.15(a) (eff. July 1, 2015); *Kauffman v. Wrenn*, 2015 IL App (2d) 150285, ¶ 27. Illinois Rule of Professional Conduct 1.15(a) requires attorneys to deposit client funds in a separate interest-bearing or dividend-bearing client trust account and keep "[c]omplete records" of the client's trust account for seven years after termination of the attorney's representation of the client. Ill. R. Prof'l Conduct (2010) R. 1.15(a) (eff. July 1, 2015). Illinois Rule of Professional Conduct 1.15(c) mandates that an attorney deposit into a client trust

account those funds received by the attorney to secure payment of legal fees and expenses, with those funds to be withdrawn by the lawyer "only as fees are earned and expenses incurred." Ill. R. Prof'l Conduct (2010) R. 1.15(c) (eff. July 1, 2015). "Funds received as a fixed fee, a general retainer, or an advance payment retainer shall be deposited in the lawyer's general account or other account belonging to the lawyer." *Id.*

¶ 28    Thus, Illinois Rule of Professional Conduct 1.15(c) contemplates various types of "retainers"—legal fees and expenses paid in advance for work that a lawyer will perform in the future. A "general" retainer—paid by a client to the lawyer to ensure the lawyer's availability during a specific period or for a specific matter—is earned when paid, so that it becomes the property of the lawyer immediately upon payment regardless of whether the lawyer ever actually performs any services for the client. A "security" retainer—paid in advance of services rendered—must be deposited into a client trust account and remains the property of the client until those funds are applied to services rendered or expenses incurred, with any unapplied funds refunded to the client. An "advance payment" retainer is payment to the lawyer for the commitment to provide legal services in the future, with ownership of the funds passing immediately to the lawyer (so that the funds may not be deposited into a client trust account) and with any portion of the advance payment retainer not earned by the lawyer to be refunded to the client upon termination of services. Ill. R. Prof'l Conduct (2010) R. 1.15(c), cmts. 3A-3C (eff. July 1, 2015); *Dowling v. Chicago Options Associates, Inc.*, 226 Ill. 2d 277, 285-87 (2007). A "fixed fee" (or lump-sum fee) is a fee charged where the lawyer agrees to provide a specific service (*e.g.*, defense of a criminal charge, a real estate closing, or preparation of a will) for a fixed amount and is generally not subject to the obligation to refund any portion to the client, although the lawyer may not charge or collect an unreasonable amount in a fixed fee, as with all fees. Ill. R. Prof'l Conduct (2010) R. 1.15(c), cmt. 3C (eff. July 1, 2015). It is not uncommon for a fixed fee retainer to be utilized in some uncontested prove-ups where there is an agreed settlement. General retainers are unlikely to be utilized for matters under the Act. In the majority of contested proceedings under the Act, a security retainer would likely be the most common type of retainer.

¶ 29    "An advance payment retainer should be used sparingly, only when necessary to accomplish a purpose for the client that cannot be accomplished by using a security retainer." Ill. R. Prof'l Conduct (2010) R. 1.15(c), cmt. 3C (eff. July 1, 2015). For example, an advance payment retainer is appropriate where the client wishes to hire counsel to represent him against judgment creditors, where paying a security retainer with the funds remaining the property of the client would subject those funds to the claims of creditors and could make it difficult for the client to hire legal counsel. *Dowling*, 226 Ill. 2d at 293. Both advance payment retainers and security retainers are subject to a lawyer's duty to refund any unearned fees, with the client having an unqualified right to discharge the lawyer. *Id.* If discharged, the lawyer may only retain the amount of money that is reasonable in light of the services performed prior to discharge. *Id.*

¶ 30    Any written retainer agreement should clearly define the kind of retainer being paid. *Id.* If the agreement is for a security retainer, the term "security retainer" should be used in the agreement, and the agreement should state that the funds remain the property of the client until used to pay for services rendered and that the funds will be deposited in a client trust account. *Id.* Similarly, an agreement for an advance payment retainer "shall be in a writing signed by the client that uses the term 'advance payment retainer' to describe the retainer." Ill. R. Prof'l

Conduct (2010) R. 1.15(c) (eff. July 1, 2015). A written agreement for an advance payment retainer should state (1) the special purpose for the advance payment retainer and an explanation why it is advantageous to the client, (2) that the retainer will not be held in a client trust account and will become the property of the lawyer upon payment and that the funds will be deposited into the lawyer's general account, (3) the manner in which the retainer will be applied for services rendered and expenses incurred, (4) that any portion of the retainer not earned or required for expenses will be refunded to the client, and (5) that the client has the option of employing a "security" retainer, but if the lawyer is unwilling to represent the client without receiving an advance payment retainer, the agreement must so state and provide the lawyer's reasons for that condition. Ill. R. Prof'l Conduct (2010) R. 1.15(c) (eff. July 1, 2015). If the parties' intent is not evidenced from the retainer agreement, the agreement for a retainer will be construed as providing for a security retainer. Ill. R. Prof'l Conduct (2010) R. 1.15, cmt. 3B (eff. July 1, 2015). In the instant case, it appears the retainer fee paid was a security retainer.

¶ 31    In reviewing the various types of retainers, we find that when retainer money is available to be refunded to the client under a retainer agreement in accordance with Illinois Rule of Professional Conduct 1.15 as of the time of due notice by the moving party of the motion for interim attorney fees, those funds are also "available" for disgorgement under section 501(c-1)(3) of the Act. We acknowledge that there is a current conflict among the appellate court districts in Illinois as to how section 501(c-1)(3) of the Act should be interpreted for the purpose of disgorging fees already paid to and earned by the attorney. Compare *In re Marriage of Squire*, 2015 IL App (2d) 150271 (payments made to attorneys for services already rendered may be ordered disgorged), with *In re Marriage of Altman*, 2016 IL App (1st) 143076 (payments made to attorneys for services already rendered may not be ordered disgorged). For the reasons stated in the analysis, we agree with the *Altman* conclusion as to this issue. In *Squire*, 2015 IL App (2d) 150271, the Second District held that payments made to attorneys for services already rendered may be ordered disgorged. In *Altman*, 2016 IL App (1st) 143076, the First District, with one justice dissenting, refused to follow *Squire* and held that payments made to attorneys for services already rendered may not be ordered disgorged. Prior to those opinions, the Illinois Supreme Court held that "advance payment retainers" were subject to disgorgement, with no discussion of whether the disgorged payments were from unearned or earned fees paid to the attorney for work already completed. *Earlywine*, 2013 IL 114779, ¶ 29 (holding that "advance payment retainers" in dissolution cases are subject to disgorgement pursuant to section 501(c-1)(3) of the Act).

¶ 32    In *Squire*, the husband petitioned for interim attorney fees. *Squire*, 2015 IL App (2d) 150271, ¶ 2. The husband was employed, but his monthly expenses exceeded his monthly income. *Id.* ¶ 3. The wife was unemployed but had paid her attorney a $120,000 retainer with money borrowed from her mother. *Id.* ¶ 4. The wife's counsel argued that the money could not be disgorged because the money had already been earned and deposited into counsel's general account. *Id.* ¶ 5. The trial court ordered the wife's attorney to pay the husband's attorney $60,000. *Id.* ¶¶ 6-7. On appeal, the wife's attorney argued that section 503 of the Act referred to "available" funds and the $120,000 was not "available" for disgorgement because it had been earned and deposited into counsel's general account. *Id.* ¶ 9. The Second District appellate court affirmed the trial court's finding that the funds were available, reasoning that the purpose of the Act was to achieve substantial parity between the parties. *Id.* ¶¶ 20-23. The

*Squire* court also reasoned that if it held that earned fees are not subject to disgorgement, the attorney of the financially advantaged spouse could "file voluminous pleadings and motions early in the case, thus 'earning' the retainer, while leaving the other spouse to respond to a mountain of paperwork with little chance of obtaining resources to do so properly." *Id.* ¶ 21. It further found that the Illinois Supreme Court in *Earlywine* had determined that retainers were subject to disgorgement because retainers became a law firm's property immediately upon payment, so that the term "available" funds as used in section 501(c-1)(3) simply meant that the "funds exist somewhere." *Id.* ¶ 22. There was no discussion by the *Squire* court of the ethical obligation to refund the unearned portion of the retainer in either a security retainer or advanced payment retainer.

¶ 33        In *Altman*, the wife petitioned for interim attorney fees for $54,098.68 of already incurred fees and $25,000 for prospective fees. *Altman*, 2016 IL App (1st) 143076. The trial court found that "both parties lacked sufficient access to assets or income to pay reasonable attorney fees and costs and that the case presented a classic scenario for invocation of the Act's 'leveling of the playing field' provisions." *Id.* ¶ 10. The trial court, along with other allocations of marital money, ordered the husband's attorney to disgorge $16,000 in fees paid by the husband for services already rendered. *Id.* The husband's attorney appealed the subsequent contempt order after he failed to comply with the disgorgement order. *Id.* ¶ 11. On appeal, the First District noted that some lawyers may be unable to comply with orders to disgorge funds that they have already earned over the past several months without serious financial hardship and that "it would be an anomaly" for a lawyer who had been granted leave to withdraw from a case to be called upon months or years later to write a check to the opposing party's counsel. *Id.* ¶¶ 34-35. "It is just such an absurd result that our construction of the statute avoids." *Id.* ¶ 34. The *Altman* court held that funds earned by and paid to a party's lawyer for services rendered were not "available funds" within the meaning of section 501(c-1)(3), reasoning that it was not the legislature's intent "that the financial burden of leveling the playing field should be borne, in substantial part, by lawyers who must refund, under pain of contempt, fees they have earned." *Id.* ¶ 36.

¶ 34        In the current matter, pursuant to our analysis, there was no portion of the retainer paid by Andrew that was "available" for disgorgement because the entirety of the retainer had been applied to services rendered or expenses incurred and had already been earned by Holwell. The parties stipulated that the funds paid or owed to the attorneys were reasonable and necessary. Under our interpretation of section 501(c-1)(3) of the Act, at the time of the notice of the petition for interim attorney fees, there were no unapplied funds in Holwell's possession that were "available" to be refunded to Andrew, and therefore, no funds were "available" for disgorgement.[1] As to the determination of whether disgorgement of attorney fees pursuant to section 501(c-1)(3) of the Act was proper, we hold that a trial court may not require payment of interim attorney fees by way of disgorgement of retainer funds previously paid to an attorney when, prior to the attorney receiving notice of the petition for interim fees, the attorney has already earned those funds and the attorney is under no obligation to otherwise return those funds to the client. Thus, we conclude that Holwell's earned attorney fees, which the parties

_____

[1]Due to the lack of clarity and certainty in the record, we are not addressing the disputed $13,000 previously paid to Boback that was being held by Holwell where there was a dispute as to which party owned the money.

had stipulated were reasonable and necessary, were not "available funds" within the meaning of section 501(c-1)(3) of the Act. Accordingly, we reverse the trial court's disgorgement order.

¶ 35                                           C. Contempt Order

¶ 36        Because the disgorgement order was invalid and was the underlying basis for the trial court finding Holwell in contempt, we vacate the contempt finding. See *Radzik*, 2011 IL App (2d) 100374, ¶ 67 ("[i]t is appropriate to vacate a contempt finding on appeal where the refusal to comply with the court's order constitutes a good-faith effort to secure an interpretation of an issue without direct precedent").

¶ 37                                             CONCLUSION

¶ 38        Due to our resolution of the foregoing issues, we need not address the other arguments by the parties on appeal. For the foregoing reasons, we reverse the disgorgement order and vacate the contempt orders of the circuit court of Will County and remand for further proceedings.

¶ 39        Disgorgement order reversed; contempt orders vacated; cause remanded.