2024 IL App (1st) 220224-U
No. 1-22-0224

FIRST DIVISION
June 24, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| In re Marriage of: | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois, |
| MARIJA BULATOVIC, | ) | Domestic Relations Division |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | No. 2016 D 8040 |
| v. | ) | |
| | ) | |
| MARKO STOJANOVIC, | ) | The Honorable |
| | ) | Lionel Jean-Baptiste, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

## ORDER

¶ 1    *Held*:  We lack jurisdiction to decide the non-final order denying appellant's request to reapportion the parties' responsibility for fees incurred by the guardian *ad litem* for the parties' child. We otherwise affirm the appealed-from orders ruling on respondent-appellant's four petitions to modify or abate his maintenance and child support obligations.

¶ 2    This appeal concerns post-divorce decree litigation between former spouses, respondent-appellant Marko Stojanovic (Marko) and petitioner-appellee Marija Bulatovic (Marija).  Marko appeals from the circuit court's September 21, 2021 order that, *inter alia*, ruled upon his four separate petitions to modify or abate his maintenance and child support obligations; he also appeals

from the order denying his motion to reconsider. In addition, he appeals from a separate order denying his request to reapportion the parties' responsibility to pay the fees of the guardian *ad litem* (GAL) appointed for the parties' child.

¶ 3    For the following reasons, we find we lack jurisdiction to review the order concerning the parties' share of GAL expenses. We otherwise affirm the appealed-from orders.

¶ 4                                    BACKGROUND

¶ 5    Marko and petitioner-appellee Marija Bulatovic (Marija) were married in October 2012. They had one child, F.S., who was born in August 2013. The parties separated in 2015, and Marija filed a petition for dissolution of marriage in 2016.

¶ 6            Terms of the Marital Settlement Agreement

¶ 7    In August 2016, the parties executed a Marital Settlement Agreement (MSA), which contemplated that it would be submitted to the trial court and, if approved, would be incorporated into a judgment for dissolution of marriage. The MSA recited that Marija was represented by counsel, while Marko was *pro se*.

¶ 8    The MSA obligated Marko to pay child support of "$300 weekly" as well as "mandatory school expenses." Regarding maintenance, Article II of the MSA provided that: "Wife shall in consideration of the promises of this Agreement, receive 10% of Husband's salary which computes to one hundred fifty dollars per month for three years."[1]

¶ 9    The Court Enters a Dissolution Judgment after the Parties Agree In Open Court That
Marko Will Pay Maintenance in the Form of Rent

_____

[1] The statement that $150 per month in maintenance represented "10% of Husband's salary" indicated he earned $1500 per month, or $18,000 per year. The record does not otherwise indicate his occupation or his employer at the time the MSA was executed in 2016.

¶ 10    The court held a hearing upon the dissolution petition on September 8, 2016, at which Marija was represented by counsel and Marko appeared *pro se*. The record reflects that the court reviewed a copy of the signed MSA during that hearing. On direct examination by her counsel, Marija testified that she wished for the MSA to be incorporated into the dissolution judgment, but that Marko would be paying maintenance in the form of paying her rent for three years. In the following exchange, Marko indicated he agreed to this:

> "[Marija's counsel]. And you're going to be getting maintenance for approximately three years, right?
>
> [Marija]. Yes.
>
> Q. Maintenance is going to be in the form of Mar[k]o paying for your rent, correct?
>
> A. Yes.
>
> Q. At this time, it's approximately $1150. We believe it's going to be going up to $1,200 a month; is that correct?
>
> [Marko]: No. Eventually. Right now $1,045 at the moment. We'll see after the lease expire[s] how much it's going to be. Hopefully not more than 12[00].
>
> [Marija's counsel]: Marko's going to be paying $300 per week as and for child support?
>
> A.  Yes.
>
> Q. That's besides the money for the rent, correct?
>
> A. Yes."

¶ 11    Later in the same hearing, the court asked to clarify the parties' understanding on maintenance. In the following exchange, Marko confirmed he agreed that he would pay rent up to $1200 per month:

"THE COURT: Could you clarify the maintenance issue? It reads here [in the MSA] that *** she will receive 10 percent of husband's salary which computes to 150 per month.

[Marija's counsel]: We'll change that. That was – We changed that to the part of the rent. Instead of 10 percent, he will pay rent for the 3 years. More than 10 percent.

THE COURT: So you'll be paying the rent which it stands currently at $1,045 per month?

[Marija's counsel]: Correct.

THE COURT: And you will continue to pay the rent as whatever it may be for another 3 years total.

[Marija's counsel]; Yes, Judge.

THE COURT: Is there a limit?

[Marija's counsel]: Three years. We believe it may go up as high as 1200.

[THE COURT]: So up to $1200?

[Marko]: Yes.

THE COURT: Not 3,000, right?

[Marko]: We're hoping not for, yeah.

THE COURT: I'm just trying to get clear because we want to avoid post-decree activities. So my understanding is that you will be paying maintenance in the form of rent?

[Marija's counsel]: Yes.

THE COURT: For your spouse. Which stands right now at $1,045 per month. And you are willing to pay that up to a certain amount per month for three years?

[MARKO]: Up to $1200."

¶ 12    The court then recited that it had jurisdiction, that it approved the parties' parenting plan, and that Marko agreed to pay $300 per week for child support. Before entering judgment, the court referenced the MSA and the agreement regarding Marko's payment of rent as maintenance:

"Additionally, the parties entered into a marital settlement agreement to allocate their assets. Of note is the fact that the parties desire to enter into an agreement to pay maintenance. Petitioner [Marija] will be asking the court to bar respondent [Marko] from receiving maintenance from her.

So you realize by barring maintenance today, by foregoing it, you can never come back to get maintenance from the Court, right?

[Marko]: Yes.

THE COURT: However, respondent [Marko] will pay maintenance to his spouse at the rate of $1,045 per month representing the current rent that [Marija] is paying. He will do so

for three years. Should the rent increase, he will pay up to $1200 per month.

    ***So the Court finds that the marital settlement agreement is fair and equitable and not unconscionable and will incorporate that into the judgment and will enter the judgment for dissolution of marriage today."

Marko made no objection or comment at that time.

¶ 13    The same date, September 8, 2016, the court entered a judgment of dissolution of marriage, which incorporated a parenting plan under which F.S. primarily resided with Marija.[2] The judgment provided that the MSA was "fair and reasonable" and that it was incorporated into the judgment. However, the written judgment of dissolution did not contain Marko's agreement to pay maintenance to Marija in the form of rent.

¶ 14    <u>Commencement of Post-Decree Litigation</u>

¶ 15    Beginning in 2018, the parties engaged in voluminous post-decree litigation, filing numerous motions and petitions against each other relating to disputes about parenting and financial issues. Although the common law record is large (over 1400 pages), we summarize the history relevant to the limited issues raised in this appeal.

¶ 16    The record reflects that, after disputes arose about parenting time, in February 2018, the court ordered the appointment of Michael Bender as the child's guardian ad litem (GAL).

¶ 17    In March 2018, the court entered a "Uniform Order for Support" reflecting the parties' agreement that Marko would pay $300 weekly. That order did not indicate Marko's employment or income at that time.

---

[2] The terms of the parenting plan are not at issue in this appeal.

¶ 18    In April 2018, Maria filed an "emergency petition for rule to show cause" in which she alleged that Marko had failed to pay that month's rent and had not paid child support since February 2018. Among other relief, she sought an order directing Marko to pay her attorneys' fees and costs associated with the petition.

¶ 19    On May 15, 2018, the parties appeared before the court "for status of rental payment [and] fees." The court entered an order reflecting that Marko paid for May rent on that date.

¶ 20    Another document also dated May 15, 2018 indicates the parties sought to incorporate the orally-agreed to rental obligation into the written MSA. Specifically, the record includes an "Agreed Order" dated May 15, 2018 stating that the parties, through their attorneys, agreed to reform the MSA to reflect Marko's obligation to pay rent of up to $1200 for three years.[3] Specifically, it stated that Article 2 of the MSA would be "reformed" to provide that "wife shall in consideration of the promises of this agreement, receive in excess of 10% of husband's salary which shall be paid by husband by paying the rent per month which is currently $1,045, and will be capped at $1,200 per month for three years."[4] The order specified that "if either party possesses a copy of a Marital Settlement Agreement/Judgment for Dissolution of Marriage which provides different than the above, this Order shall control the enforceable terms."

¶ 21    In July 2018, Marija filed a petition for Marko to pay $4833 of her attorney's fees and costs incurred with respect to orders entered between April 2018 and June 2018, pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/508(b) (West 2018) (in proceeding for the enforcement of an order or judgment, "when the court finds that the failure

---

[3] The Agreed Order reflects that at the time, Marko was represented by the Law Offices of Joshua E. Stern. The record reflects that Stern withdrew from the representation in June 2018.

[4] Marko's brief indicates that this "Agreed Order" is incomplete, citing a portion of the record where only the first page of the order appears, C 184. However, both pages of the "Agreed Order" are found elsewhere in the record, at C 753-54, where it is reproduced as one of the exhibits to a February 2020 petition for rule to show cause filed by Marija.

to comply with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party.")

¶ 22    In August 2018, the GAL filed a petition for approval of GAL's fees, to be allocated between the parties as ordered by the court. The record reflects that the court ordered Marko to be responsible for 80% of the GAL's fees, while Marija would be responsible for 20%.

¶ 23    In November 2018, the court entered a judgment ordering Marko to pay $2,705.63 of section 508(b) fees "incurred to enforce payment of rent and child support," as well as $1,567.50 for reimbursement of preschool tuition.  A separate order of November 13, 2018 found that Marko owed the GAL fees of $3,420 and ordered him to make monthly payments of at least $500 per month.

¶ 24    On January 31, 2019, Marija filed a petition for rule to show cause alleging Marko had not paid rent for the month of January 2019.  On February 6, 2019, the court ordered Marko to pay January and February rent and directed him to  "electronically transfer into Marija's bank account the full rental payment" each month.

¶ 25    On March 5, 2019, Marija filed a second petition for section 508(b) attorney fees incurred in connection with her efforts to compel Marko to pay rent. In his response thereto, Marko admitted that he had not paid rent for January and February and stated that he was no longer financially able to continue making payments as originally ordered in the dissolution judgment.

¶ 26        Marko's March 2019 Petition to Modify Maintenance and Child Support

¶ 27    On March 28, 2019, Marko filed the first of four petitions at issue in this appeal seeking to modify or abate his financial obligations. The March 2019 petition sought to modify his obligations for maintenance, child support and daycare expenses. Notably, that filing recited that it was

"ordered in the Marital Settlement Agreement incorporated into the judgment for dissolution of Marriage that Marko was to pay Marija's rent in lieu of maintenance in the amount of $1,045 per month, to be capped at $1,200 per month for three years." Marko also acknowledged he had agreed to pay $300 per week for child support, "knowing the amount was more than 20% of Marko's gross income at the time Judgment was entered." Marko's petition did not specify his income or employment but claimed there was a substantial change in circumstances, citing funeral expenses following the August 2018 death of his father and stating that he assisted his mother with living expenses. Marko stated that "while [his] income remains unchanged his expenses have increased substantially."

¶ 28    On April 1, 2019, the court approved Marija's section 508(b) fee petition in the amount of $4,937.08. On the same date, the court ordered Marko to pay $2000 to the GAL.

¶ 29    On June 3, 2019, the GAL filed a petition for rule to show cause and for a finding of indirect contempt due to Marko's failure to make court-ordered payments.

¶ 30    On June 4, 2019, Marija file an "emergency verified petition for rule to show cause" based on Marko's failure to pay rent or daycare expenses for the month of June 2019, and his failure to pay section 508(b) fees due to Marija's counsel pursuant to the April 2019 order. In separate orders in June and July 2019, the court found Marko in contempt upon petitions by Marija and the GAL.

¶ 31    Marko's August 2019 Petition to Abate Child Support and Maintenance

¶ 32    On August 5, 2019, Marko filed a "Petition to Abate Child Support, Maintenance, Daycare and Other Relief.[5] In that petition, Marko averred that he was terminated from employment on July 26, 2019 and had filed for bankruptcy. He attached a bankruptcy petition and a July 26, 2019

---

[5] Marko's August 2019 petition again recited that the judgment for dissolution incorporated the MSA under which he was "to pay Marija's rent in lieu of maintenance in the amount of $1,045 per month, to be capped at $1,200 per month for three years."

termination letter from his former employer, ProSport Express, Inc.[6] He requested abatement of his child support and maintenance obligations until he found new employment.

¶ 33    On August 13, 2019, the court stayed proceedings due to Marko's pending bankruptcy. The record reflects that proceedings resumed in late 2019.

¶ 34    Marko's February 2020 Petition for Modification of Child Support

¶ 35    On February 4, 2020, Marko filed a petition for modification of the $300 weekly child support obligation ordered in the dissolution judgment, citing a significant change in his financial circumstances following his July 2019 termination.[7] He stated that his bankruptcy was discharged in November 2019, and that in December 2019, he began a new job "earning a substantially lower income" as an auto mechanic. The February 2020 petition did not specify the amount of his new income or identify the new employer.

¶ 36    Marija opposed that petition. She averred that even in his new employment, he was expected to earn more than what was originally contemplated by the MSA. She also argued that Marko had the ability to obtain higher-paying employment.

¶ 37    Separately, in February 2020, Marija filed a petition for rule to show cause and sanctions based on Marko's alleged failure to pay September 2019 rent and several thousand dollars in child support expenses. It recited this was the "fourth instance wherein Marija was forced to file a Petition for Rule to Show Cause to secure the required renal payment."

¶ 38    On July 28, 2020 the court entered an order setting a November 2020 trial date on "all outstanding pleadings", including Marko's petitions as well as Marija's petition for 508(b) fees.

---

[6] That letter did not indicate the nature of Marko's position with ProSport Express or his salary prior to termination.

[7] The record does not reflect that the $300 per week child support obligation was modified between entry of the September 2016 dissolution judgment and the filing of Marko's petitions.

The court directed the parties to exchange discovery. The trial date was continued by a number of months, during which time the parties filed additional motions and petitions.

¶ 39 Marko's November 2020 Petition and the April 2021 Trial

¶ 40 On November 4, 2020, Marko filed a "Second Petition to Abate Child Support, Maintenance, Daycare and Other Relief" in which he again he acknowledged his rent obligation under the MSA and dissolution judgment.[8] In that petition, Marko stated he had been terminated from employment with C&C Equipment Repair on October 5, 2020, as a result of missing work to attend court hearings on Marija's "frivolous" motions. Marko's November 2020 petition attached a termination letter from that employer but did not indicate what income Marko had earned or otherwise describe any other assets or sources of income. Marko requested abatement of child support, maintenance and other obligations until he became gainfully employed.

¶ 41 The record indicates that the court conducted trial on April 8 and 14, 2021 with respect to several outstanding financial and parenting issues. However, there are no transcripts from those proceedings in the record on appeal.

¶ 42 Denial of Marko's Request to Reallocate Responsibility for GAL Fees

¶ 43 In June 2021 (before the court issued findings from the April 2021 trial), Marko filed a petition seeking to reallocate the parties' shares of responsibility for the GAL's costs.[9] He requested that Marija should pay 75% and he should pay 25%. Marija opposed that request.

---

[8] Paragraph 5 of the November 2020 petition recited: "Marko was ordered in the Marital Settlement Agreement incorporated into the Judgment for Dissolution of Marriage was [sic] to pay Marija's rent in lieu of maintenance in the amount of $1,045 per month, and to be capped at $1,200 per month for three years."

[9] On December 9, 2020, the GAL filed a petition stating he was owed $13,887.50 in fees.

¶ 44 On September 20, 2021, the court entered an order denying Marko's petition to reallocate the GAL's fees. In doing so, it noted that Marko was "significantly underemployed" and that "[e]ven with the larger income, [Marija's] obligations are significantly more than [Marko']s responsibilities." Thus, it declined to change the parties' respective responsibilities as to GAL fees.

¶ 45 The September 20, 2021 Post-Trial Order Deciding Marko's Four Petitions

¶ 46 On September 20, 2021 the court entered an order deciding Marko's petitions and Marija's petition for attorneys' fees financial pleadings. The order recited that there had been "forty-four (44) months of acrimonious post-decree litigation." It explained that: "After several and frequent substitutions of attorneys for Marko, contempt findings against Marko, and several unresolved petitions and motions from both parties, it became necessary to hold a trial." The court noted that the parties had testified and presented documentary evidence at trial on April 8 and 14, 2021.

¶ 47 The order recited that the dissolution judgment obligated Marko to pay (1) child support in the amount of $300 per week and (2) maintenance "at the rate of up to $1,200.00 per month in the form of rent for 3 years which expired in August 2020." It found "Marko has now fulfilled his maintenance obligation to Marija."

¶ 48 The court proceeded to deny Marko's first (March 2019) motion to modify maintenance and child support, finding that, at the time of that filing, there was no substantial change of circumstances to merit a modification. The court also denied Marko's August 2019 petition to abate child support and maintenance, again finding no substantial change in circumstances. The court reasoned that although Marko had lost his job in July 2019, there was uncontroverted evidence that Marko received several thousand dollars in non-employment deposits from 2018-2020, as well as $53,082.014 from his late father's life insurance policy.

¶ 49    However, the court proceeded to find that there had been a substantial change in circumstances when Marko filed his second (February 2020) petition to abate child support, noting that Marko had been terminated from another job and no longer had "deposits from non-employment sources." The court thus granted Marko's February 2020 petition in part, ordering a 50% reduction of his child support payment (from $300 weekly to $150 weekly), retroactive to February 4, 2020. The court otherwise denied the February 2020 petition.

¶ 50    Regarding Marko's November 2020 petition to abate child support and maintenance, the court found it was "moot" with respect to child support, in light of its decision to reduce his child support obligation by 50%. The court otherwise denied the November 2020 petition.

¶ 51    In other parts of the order, the court noted that it had found Marko in contempt on seven occasions between February 2019 and October 2020, and that Marija had petitioned the court to order Marko to pay corresponding legal fees and costs under section 508(b). The court observed that Marko had made some, but not all, of the payments previously ordered by the court.

¶ 52    Based on its findings, the court reduced Marko's child support obligation but entered a judgment against him in the amount of $31,386.52. That amount included the court's calculation of past child support and daycare expenses, $4577.37 in "tax intercepts for the years 2018 and 2019," and $10,462.08 for Marija's attorney's fees and costs.

¶ 53    Marko's Motion to Reconsider

¶ 54    On October 19, 2021, Marko filed a motion to reconsider the September 20, 2021 order, asserting five "counts." First, he claimed the court "misapplied the evidence" at trial when it denied his March 2019 motion to modify maintenance, child support, daycare and other expenses. Second, he claimed the court erred in denying his August 2019 petition to abate child support, maintenance and day care; stating he was unemployed from July 26, 2019 to December 14, 2019. Third, Marko

urged that given his termination in October 2020, his child support obligation should be abated "retroactively from October 5, 2021 until Marko secures new employment." Fourth, he claimed that his "child support obligation reduction is not properly calculated by the Court misapplying his gross income in 2018, 2019, 2020 and presently." Finally, he claimed the court "misapplied the evidence with respect to the IRS Tax Intercept obligation in the amount of $4,557.37."

¶ 55    In opposition to Marko's motion for reconsideration, Marija claimed Marko relied on either "old information already assessed by the court" or documentation that he failed to disclose in discovery.

¶ 56    On January 18, 2022, the court denied Marko's motion for reconsideration, stating there was no newly discovered evidence and finding that it had made no errors in its ruling. The court specified that this decision was final and appealable under Illinois Supreme Court Rule 304(a).

¶ 57    On February 17, 2022, Marko filed a notice of appeal, specifying that he sought to challenge: (1) the September 20, 2021 post-trial order deciding his petitions; (2) the order denying Marko's motion for reconsideration; and (3) the separate order entered September 20, 2021, that denied Marko's request to reallocation responsibility for the GAL's fees.

¶ 58    Marija did not file an appellee brief in response to Marko's opening brief. The case was taken on Marko's brief only.

¶ 59                    ANALYSIS

¶ 60    Marko's appeal primarily relies on an argument not raised below to urge that we should vacate the court's orders, to the extent they were premised on his obligation to pay maintenance to Marija in the form of rent for three years. He now asserts he was under no such binding obligation, as there was no valid modification of the maintenance provision in the written August 2016 MSA, that specified payment of $150 per month for three years. Thus, he urges that "orders regarding

any rent payments should be vacated," including the orders deciding his petitions, orders finding him in contempt for failure to pay rent, and orders directing him to pay Marija's attorneys' fees incurred in connection with his failure to pay rent.

¶ 61     Apart from challenging the validity of the maintenance obligation, he further argues that (1) the court abused its discretion by failing to timely consider his petitions until the September 2021 order, (2) the court erred in deciding his petitions because it did not adequately consider the parties' respective financial conditions, and (3) the trial judge exhibited bias against him. Finally, he challenges the court's denial of his request to re-allocate the parties' responsibility for fees owed to the GAL.

¶ 62     For the following reasons, we find we lack jurisdiction to assess the challenge to the denial of his request to reapportion responsibility for GAL fees. We otherwise reject the remainder of his arguments and affirm the trial court.

¶ 63     <u>Jurisdiction</u>

¶ 64     Before we can address the merits, we must assess whether we have jurisdiction. An appellate court "always has an independent duty to consider its own jurisdiction," even if no party has raised it. *Johansson v. Glink*, 2021 IL App (1st) 210297, ¶ 36. "Unless a supreme court rule or statute provides appellate jurisdiction, this court only has jurisdiction to review appeals from final judgments [Citation.]" *Van Der Hooning v. Board of Trustees of University of Illinois*, 2012 IL App (1st) 111531, ¶ 6.

¶ 65     Illinois Supreme Court Rule 304(a) "authorizes appeals from final judgments that do not dispose of an entire proceeding if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Lakeshore Centre Holdings, LLC, v. LHC Loan, LLC*, ¶ 12; Ill. S. Ct. R. 304(a)(eff. Mar. 8, 2016). For purposes of Rule 304(a),

an order or judgment is considered to be final and appealable "if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part thereof." *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 23. "Absent a Rule 304(a) finding, a final order disposing of fewer than all of the claims is not an appealable order and does not become appealable until all of the claims have been resolved." *In re Marriage of Gutman*, 232 Ill. 2d 145, 151 (2008).

¶ 66 Here, the trial court made a Rule 304(a) finding when it denied Marko's motion for reconsideration of the September 2021 post-trial order that ruled upon his four petitions. The denial of the motion for reconsideration was a final order, and Marko filed a notice of appeal within 30 days. Thus, we have jurisdiction to review the denial of Marko's motion for reconsideration, as well as the corresponding September 2021 order ruling on his petitions. See *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 15 (finding appellate jurisdiction to review denial of petition to modify child support obligation, where the trial court made a finding pursuant to Rule 304(a) and appellant filed timely notice of appeal); Ill. S. Ct. R. 303(a)(1)( a notice of appeal is timely if filed within 30 days of the decision on a post judgment motion "directed against the judgment").

¶ 67 We reach a different conclusion with respect to the separate order that denied Marko's request to re-allocate the parties' responsibility for GAL fees. First, it is unclear that denial of that request was a final order with respect to the parties' liability for the GAL's costs. See *In re Estate of Rosinski*, 2012 IL App (3d) 110942, ¶¶ 23-24 (finding that order directing payment of GAL fees was not final and appealable, notwithstanding the trial court's inclusion of Rule 304(a) language, where "the GAL's duties were not terminated by the court prior to the date of the notice of appeal" and it was "reasonable to assume" there would be subsequent orders regarding future GAL fees).

Here, the record indicates that the GAL remained in place and continued to incur fees that could give rise to future motions and orders regarding the parties' responsibilities for GAL compensation. In any event, even assuming *arguendo* that the appealed-from order was a final order, the trial court made no express written finding pursuant to Rule 304(a), a prerequisite for jurisdiction under that Rule. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Further, the order regarding apportionment of responsibility for GAL fees does not fall into Rule 304(b)'s limited categories of final judgments and orders appealable without a special finding. See Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). Nor does it fall within the specified categories of interlocutory orders appealable as of right under Rule 307(a). Therefore, we conclude we lack jurisdiction to consider Marko's challenge to the order denying his request to reapportion responsibility for GAL fees. We proceed to the merits of the remaining arguments.

¶ 68    The Agreement to Pay Maintenance in the Form of Rent Was Validly Incorporated Into the MSA and Dissolution Judgment

¶ 69    Marko primarily urges that in deciding his petitions, the trial court abused its discretion in finding that he was obligated to pay Marija's rent for three years as maintenance. He suggests that he was never validly obligated to pay Marija's rent as maintenance, because the MSA and dissolution judgment did not specify this obligation in writing. He emphasizes that the MSA he signed in August 2016 provided that maintenance would consist of "one hundred dollars per month for three years" and did not mention paying rent. He asserts that this written provision should control his maintenance obligation.

¶ 70    Significantly, Marko does not dispute his oral agreement in open court on September 8, 2016, that he would pay maintenance in the form of rent for three years, up to $1200:

"THE COURT: I'm just trying to get clear because we want to avoid post-decree activities. So my understanding is that you will be paying maintenance in the form of rent?

[Marija's counsel]: Yes.

THE COURT: For your spouse. Which stands right now at $1,045 per month. And you are willing to pay that up to a certain amount per month for three years?

[MARKO]: Up to $1200."

¶ 71 Although his brief acknowledges that the trial judge orally referenced the payment of rent as maintenance, he claims he is not bound by it because "[n]o written, signed marital settlement agreement setting forth the above terms was entered by the court." He asserts that there was no valid modification of the agreement under various contract law defenses, including the statute of frauds, lack of consideration, and unconscionability. He suggests that because he was never legally bound to pay Marija's rent, the trial court erred in all subsequent orders that relied on that obligation. As a remedy, he urges that his prior rent payments "should offset Marko's child support payments."

¶ 72 Notably, it appears Marko never raised any challenge to the validity of his obligation to pay rent in any of the four petitions to modify or abate his financial obligations that were decided in the appealed-from orders. To the contrary, three of his petitions (filed March 2019, August 2019, and November 2020) specifically acknowledged that the 2016 judgment for dissolution obligated Marko to pay Marija's rent (up to $1200) in lieu of maintenance for three years. Nor does the

record contain transcripts of any hearings or trial proceedings at which Marko brought this argument to the trial court's attention.[10]

¶ 73    "Issues not raised in the trial court are waived and cannot be argued for the first time on appeal." *In re Marriage of Minear*, 181 Ill. 2d 552, 564 (1998). Here, the challenge to the validity of the rental obligation is being argued for the first time on appeal and was waived. Nevertheless, we recognize that waiver is a limitation on the parties and not the courts. *In re Marriage of Baecker*, 2012 IL App (3d) 110660, ¶ 20. Thus, "a court of review may decline to deem a party's argument waived in order to obtain a just result and maintain a sound and uniform body of precedent." *Id.*

¶ 74    Regardless of waiver, we find Marko's attack on the validity of his obligation to pay rent as maintenance is without merit. Marko asserts various contractual defenses, but none of them is convincing. The record reflects that the agreement to pay rent as maintenance was made part of the MSA and incorporated into the dissolution judgment, after the trial court explicitly confirmed Marko's consent thereto.

¶ 75    In urging that the original written maintenance provision controls, Marko suggests that the rent-as-maintenance agreement discussed in court was not enforceable because it was not set forth in writing. At this point, we note that Marko appears to overlook the significance of the May 2018 "Agreed Order" entered by the court, which reflected the parties' intent to "reform" the original maintenance provision in the MSA to reflect his obligation to pay rent as maintenance for three years.[11] The order specified that its terms would control over any "copy of a Marital Settlement Agreement/Judgment for Dissolution of Marriage which provides different than the above."

---

[10]In this regard, we note that it was Marko's burden, as appellant, to present a complete record. Any gaps in the record are construed in favor of affirmance.

[11] We again note that Marko's brief indicates the Agreed Order was "incomplete" and suggests it is "unclear" whether it was actually entered, citing a portion of the common law record where only the first page appears. However, both pages of the order appear elsewhere in the record.

¶ 76    In any event, even if we disregarded the "Agreed Order", we would reject Marko's attack on the validity of the maintenance arrangement he agreed to orally in court. The terms of a valid marital settlement agreement may be entered into orally where the parties indicate their understanding in open court. See *In re Marriage of Haller*, 2012 IL App (5th) 110478 (rejecting challenges to marital settlement agreement where its terms were orally read in open court, and where trial court confirmed that both parties entered into the agreement voluntary);see *In re Marriage of Baecker*, 2012 IL App (3d) 110660 (finding valid oral marital settlement agreement where terms were read into the record, ex-wife told court she understood the settlement, and counsel for the incarcerated ex-husband informed the court that his client understood and approved the terms). Moreover, a written contract may be orally modified. See *Falcon, Ltd. v. Corr's Natural Beverages, Inc.*, 165 Ill. App. 3d 815 (1987) ("under Illinois law, parties to a written contract may alter or modify its terms by a subsequent oral agreement even though *** the contract itself precludes oral modification.")

¶ 77    Here, the record makes clear that the parties orally modified the MSA's original written term regarding Marko's maintenance obligation. Marko does not dispute that in open court he orally agreed that as part of the settlement and dissolution judgment, he would be obligated to pay maintenance in the form of rent (up to $1200) for three years. Just before entering the dissolution judgment, the trial court explicitly discussed the maintenance arrangement (seeking to "avoid post-decree activities) and confirmed Marko's understanding that this would be part of the MSA and dissolution judgment. See *In re Marriage of Haller*, 2012 IL App (5th) 110478, (rejecting challenge to maintenance obligations as indefinite where its conditions were orally set out at the hearing).

¶ 78     Moreover, subsequent filings showed that Marko fully understood that he was under a three-year obligation to pay rent. As noted, three of Marko's four petitions to modify or abate specifically recited that his obligation to pay rent as maintenance was incorporated in the MSA and dissolution judgment. This is consistent with the transcript of proceedings from the date that judgment was entered.

¶ 79     We similarly reject Marko's claim that the obligation to pay rent as maintenance is unenforceable because it lacked consideration from Marija. The record makes clear that his agreement to pay rent as maintenance was incorporated into the broader MSA, which contained promises and releases from Marija that served as consideration.  We also reject Marko's claim that the agreement to pay rent as maintenance was unconscionable. In the context of spousal maintenance, "unconscionability is assessed based on the facts existing *immediately* after the agreement is made [citation] and involves at least two separate considerations: one, the conditions under which the agreement was made, and two, the economic circumstances of the parties resulting from the agreement." (Emphasis in original and internal quotation marks omitted.) *In re Marriage of Wig*, 2020 IL App (2d) 190929, ¶ 19. "Under the second consideration, an agreement is unconscionable if no man in his senses, not under delusion, would make [it], on the one hand, and *** no fair and honest man would accept [it] on the other." (Internal quotation marks omitted.) *Id*. We cannot say that the obligation to pay up to $1200 in monthly rent for three years meets this high threshold for unconscionability.

¶ 80     In short, the record makes clear that the agreement to pay maintenance in the form of Marija's rent was a valid oral modification that was incorporated into the MSA and the dissolution judgment, with Marko's understanding and consent. We reject his challenges to the court's subsequent orders, to the extent they dispute that obligation.

¶ 81    <u>The Trial Court Did Not Abuse Its Discretion With Respect to the Timing of Its</u>

<u>Decisions on Marko's Petitions</u>

¶ 82    We turn to Marko's contention that the trial court abused its discretion by waiting too long to decide his four petitions seeking to modify or abate his maintenance and child support obligations. Those petitions were filed in March 2019, August 2019, February 2020, and November 2020. He complains that by waiting to decide the petitions until the September 2021 order, the court "abused its discretion in delaying until all maintenance payments had been made." He notes that in the period between the filing of the first petition and the September 2021 decision, the court made rulings on certain petitions filed by Marija, resulting in orders directing him to pay section 508(b) attorney's fees. He suggests that all such orders should be vacated, as he "had pending motions showing that he could not afford the payments, yet the court ignored his motions (until 2021) and ruled on Marija's motions."

¶ 83    This argument is not convincing. "It is well established that trial courts have wide discretionary powers in matters of pretrial discovery, the inherent authority to control their dockets, and the inherent authority to enter sanctions for a party's failure to obey valid orders." *In re Marriage of Faber*, 2016 IL App (2d) 131083, ¶ 13. "A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005).

¶ 84    We cannot say the timing of the trial court's September 2021 post-trial decision was unreasonable. The record shows numerous and frequent filings (by both parties) on both parenting disputes and financial issues. The trial court apparently determined that it would be efficient to consolidate several of the pending filings, including Marko's four petitions, at a single trial. That was certainly a reasonable decision. The record further suggests that the April 2021 trial date was

delayed, at least in part, by discovery disputes between the parties and by both parties changing their legal counsel multiple times. Further, given the number of pleadings and issues involved, we cannot say that the issuance of the post-trial order in September 2021 was unreasonable. We thus reject Marko's timing argument.

¶ 85    The Record on Appeal Is Insufficient to Find the Court Erred in Deciding Marko's

Petitions Regarding Child Support

¶ 86    Marko separately argues that the trial court abused its discretion when it denied the relief sought in his petitions with respect to child support, other than granting a 50% reduction in his child support payments retroactive to February 4, 2020. He claims that in denying additional relief, the trial court "did not take into consideration Marija's financial situation." He notes that she had a higher income, whereas he was unemployed for a "significant period of time." He asks that we vacate any order regarding child support and that we remand for "recalculation as to the child support amounts."

¶ 87    A court's findings with respect to child support will not be disturbed absent an abuse of discretion. See *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 22. However, the record is insufficient for us to assess whether, under the trial evidence, the court abused its discretion.

¶ 88    The September 20, 2021 order deciding Marko's petitions recited that it relied on the parties' testimony and other evidence submitted at the April 2021 trial. However, the record on appeal does not contain any transcript or other record of the trial proceedings. Nor does the record on appeal contain the proposed post-trial orders submitted by the parties.

¶ 89    It is the appellant's burden to support a claim of error by presenting a sufficiently complete record of the circuit court proceedings. *Teton, Tack and Feed, LLC v. Jiminez*, 2016 IL App (1st) 150584, ¶ 19. "Where the issue on appeal relates to the conduct of a hearing or proceeding, this

issue is not subject to review absent a report or record of the proceeding." *Webster v. Hartman*, 195 Ill. 2d 426 , 432 (2001). "[I]n the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92. (1984) "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id*.

¶ 90    Here, the record does not contain any report of proceedings from the April 2021 trial that preceded ruling on Marko's petitions. Without the ability to review the trial evidence, we must presume that there was presented a sufficient factual basis for the court's decision. Thus, we cannot say the trial court's decision as to child support was an abuse of discretion.

¶ 91    <u>Marko Makes No Showing of Bias</u>

¶ 92    Finally, we briefly address Marko's claim of bias by the trial judge. He states that the trial judge ruled against him "consistently" while showing "favoritism" for Marija, noting that the same judge presided over the dissolution proceeding and the post-decree litigation. As proof of alleged bias, he points out that the post-trial order stated that the post-decree disputes "came to the attention of the Court when Marija filed a Petition for an Emergency Order of Protection" against Marko on January 25, 2018, without mentioning that Marko filed a petition against Marija on the same date. He also cites the order's reference to Marko's "several frequent substitutions of attorneys." He claims this showed the trial judge "resent[ed]" him changing counsel, especially as the court idd not mention that Marija had also changed attorneys a number of times.

¶ 93    "A trial judge is presumed to be impartial, and the burden of overcoming this presumption rests on the party making the charge of prejudice. [Citations.]" *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). "[T]he party making the charge of prejudice must present evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id*.

¶ 94    Here, Marko does not identify any convincing evidence of bias or favoritism. The mere fact that the same trial judge ruled "consistently" against him is clearly insufficient. See *id*. ("A judge's rulings alone almost never constitute a valid basis for a claim of judicial bias or partiality.") Marko does not suggest the judge made any improper remarks at trial or on any other occasion. Although the post-trial written order mentioned Marko's changes of counsel, it appears that was noted merely as part of the background explanation as to why the court decided a trial was appropriate to resolve several  pending issues. Similarly, we do not infer bias from the mere fact that the court referenced a petition filed by Marija in January 2018 without referencing Marko's opposing petition. In short, the cited examples fall far short of the evidence required to overcome the presumption of impartiality and prove a claim of judicial bias.

¶ 95                                    CONCLUSION

¶ 96    For the foregoing reasons, we conclude lack jurisdiction to decide the non-final order denying Marko's request to reapportion the parties' responsibility for fees incurred by the guardian *ad litem*. We otherwise affirm the appealed-from orders of the circuit court.

¶ 97    Affirmed.